**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF ALABAMA**
**SOUTHERN DIVISION**

| | |
|---|---|
| HENRY MARINE SERVICES INC., ) | |
|     Appellant, ) | |
| ) | |
| v. ) | CIVIL ACTION: 1:18-00113-KD-MU |
| ) | |
| DENISE I. LITTLETON, ) | |
|     Appellee. ) | |

**ORDER**

The matter is before the Court on Henry Marine Services, Inc.'s Appeal of an order from the U.S. Bankruptcy Court for the Southern District of Alabama, the bankruptcy court record, and the parties' briefs in support of their respective positions. (Docs. 1, 3-6). For the reasons stated herein, the Bankruptcy Court's March 8, 2018 order denying Henry Marine's claim for administrative expenses is **AFFIRMED**.

**I.    Background**

This appeal is from an order issued in the U.S. Bankruptcy Court for the Southern District of Alabama In re: Kudzu Marine, Inc., #13-02935-JCO-7 (related to Adversary Proceeding #15-00148, Littleton v. Lanac Investments, LLC) in which Appellant Henry Marine Services, Inc. (Henry Marine) is a Creditor seeking to recover 11 U.S.C. § 503(b)(1) administrative expenses from the Estate via Appellee Denise I. Littleton (the Trustee for the Estate). In sum, the issue is whether Henry Marine may claim as an administrative expense the maintenance and care of the vessel 1801 from March 2017-November 2017, while it was held in trust by Lanac Investments, LLC (Lanac).[1]

On May 30, 2013 Kudzu Marine, Inc. sold a vessel (the 1801) to Lanac. Approximately 85

---

[1] Henry Marine has a maritime lien against the 1801 vessel, per 46 U.S.C. § 31342, for the services rendered during the relevant time. (Doc. 5 at 18 at note 5).

days later, on August 23, 2013, Kudzu Marine filed a voluntary Chapter 7 bankruptcy petition. Two (2) years later, on August 19, 2015, the Trustee initiated an Adversary Proceeding against Lanac for avoidance of fraudulent transfer based on actual and constructive fraud (11 U.S.C. §§ 548, 544 and the *Alabama Fraudulent Transfer Act* (Ala. Code § 8-9A-1 *et seq*))[2]. The Trustee claimed the sale of the 1801 was fraudulent due to insufficient consideration, given Lanac's payment of only $493,126.61 when the Debtor purchased the 1801 for $1.3 million four (4) years prior. The Trustee also alleged that at the time of the transfer, the 1801 was the only major asset owned by the Debtor.

The Adversary Proceeding went to trial on October 17, 2016. At or around that time, the Trustee learned that Lanac had mortgaged the 1801 under a first preferred ship mortgage for $3 million and that Lanac's principal had deposited $2.4 million of that money into his personal bank account (i.e., the Trustee believed any equity in the 1801 had been drained). As such, the Trustee requested that in the event the Bankruptcy Court ruled in its favor, a money judgment issue for the Estate instead of returning the 1801.

On March 13, 2017, the Bankruptcy Court ruled partially in favor of the Trustee, finding that the transfer from the Debtor to Lanac was constructively fraudulent due to Lanac's payment of less than the reasonable equivalent value of the 1801 (but not actual fraud) to the Debtor. The Bankruptcy Court did not enter a money judgment as requested by the Trustee, because the value of the vessel could not be determined from the evidence presented. Instead, the court held that its value was to be determined by the market. The court ordered Lanac to remove the 1801 from service and hold it in trust pending a determination of the amount of lien to be given to Lanac and pending the sale/public auction of the 1801 by the Trustee. (Doc. 3 at 110). At the time of the Bankruptcy Court's ruling,

---

[2] See 11 U.S.C. § 544(b) (granting a trustee the rights and powers to avoid a transfer of property if the transfer is avoidable under applicable law by a creditor holding an allowed unsecured claim against the debtor or by a creditor holding an unsecured claim against the Debtor that is not allowable only under section 502(e); ALA. CODE § 8–9A–4 and § 8–9A–5(a)). (Doc. 1, Adversary Proceeding).

the 1801 was already out of service due to an expired Coast Guard certificate of inspection and was being moored/maintained at/by Henry Marine. This arrangement was continued by Lanac.

On March 27, 2017, the Trustee filed a Rule 9023 motion to alter or amend, stating, *inter alia*, that the mortgage on the 1801 would inhibit the Estate from benefitting from its sale/auction, and noting that the 1801 was moored at Henry Marine incurring daily charges diminishing the possibility that the Estate would see recovery.

On October 6, 2017, the Trustee moved to dismiss its claims against Lanac by filing a motion to approve a settlement. On November 8, 2017, the settlement was approved, and the court withdrew/cancelled its prior order for Lanac to remove the 1801 from service and hold it in trust. The court also ordered that any interest the Trustee had in the 1801 was abandoned. On December 18, 2017, the Adversary Proceeding was dismissed.

Prior to the dismissal, on September 13, 2017, Henry Marine moved for 11 U.S.C. § 503(b) administrative expenses to be paid from the Estate for the actual, necessary costs and expenses of preserving the 1801. On November 2, 2017, the Trustee filed an opposition. On December 20, 2017, the Bankruptcy Court granted Henry Marine's motion for administrative expenses related to its dockage/maintenance of the 1801 (fleeting, inspecting, overseeing, etc.) -- finding an actual and concrete benefit to the Estate. On January 3, 2018, the Trustee filed a motion to alter/amend, which was granted on March 8, 2018, vacating the December 20th order. In re Kudzu Marine, Inc., 2018 WL 1320182 (Bkrtcy. S.D. Ala. Mar. 8, 2018).

In the March 8th Order, the Bankruptcy Court explained that Rule 9023 relief may be granted when there is: 1) an intervening change in the law; 2) newly discovered evidence; or 3) to correct clear error or prevent manifest injustice.[3] In granting the motion, the Bankruptcy Court concluded the

---

[3] Rule 9023 states that Rule 59 "applies in cases under the Code. A motion ... to alter or amend a judgment shall be filed, and a court may on its own order a new trial, no later than 14 days after entry of judgment."

Trustee "demonstrated the need to correct clear error or prevent manifest injustice." In re Kudzu Marine, Inc., 2018 WL 1320182, *2. The Bankruptcy Court explained:

> This Court's prior order granted Henry Marine's motion for administrative expense claim pursuant to 11 U.S.C. § 503(b). The priority of an administrative expense is the highest. …The allowance of such a priority is to be carefully considered. … A decision to grant a claim administrative status pursuant to section 503(b) is within the discretion of the trial court.….limited by the Eleventh Circuit's holding that "there must be an actual, concrete benefit to the estate" before a claim is allowable…. the benefit inquiry is subjective and must be made on a case-by-case basis….In determining whether a concrete benefit is conferred in a particular case, a court must keep in mind that § 503(b)(1)(A) should be narrowly construed in order to maximize the value of an estate for the benefit of all creditors.…Furthermore, the burden of proving entitlement to an administrative expense is on the claimant. ….
>
> This court granted Henry Marine's motion on the basis that Henry Marine's dockage and maintenance of the 1801 produced an actual benefit to the Estate. Upon reflection, this Court acknowledges that while the benefit to the Estate was debatable, this Court nonetheless allowed Henry Marine's request for an administrative expense due to equitable concerns stemming from this Court ordering the 1801 be taken out of service and held in trust for the benefit of the Estate. At first blush, this Court anticipated the Estate would receive an actual and concrete benefit from the services performed by Henry Marine; however, the argument raised by the Trustee regarding the lack of any equity or an insurable interest in the 1801 now compels this Court to conclude differently.
>
> In an effort to ensure that Henry Marine was treated fairly, this Court mistakenly allowed the equities of the case to override the well-settled law regarding the determination of the existence of an administrative expense. In support of its request, Henry Marine submitted an affidavit setting forth relevant charges related to the 1801 which included entries for both maintenance and dockage services. The maintenance clearly inured to the benefit of the 1801, and not the Trustee; however, the dockage services are more difficult to characterize. Because the Trustee had only an inchoate equitable interest in the 1801, and ultimately, the parties agreed there was no equity to be realized for the Estate, the dockage services, in the end, benefitted only Lanac, the owner of the 1801.
>
> Consequently, after a further review of the facts of this case, and a reconsideration of the applicable law, this Court must find that there was no actual, concrete benefit to the Estate. Therefore….this Court's order is due to be vacated to correct clear error…..

Id. at *2-3 (internal citations omitted). Henry Marine appealed. (Doc. 1).

## II. **Standard of Review**

In a bankruptcy case, the district court functions as an appellate court. In re Sublett, 895 F.2d 1381, 1383-1384 (11th Cir. 1990). In this capacity this Court may not make independent factual

findings, but rather, must affirm the bankruptcy court's findings of fact unless the court applied an incorrect legal standard, applied the law in an unreasonable or incorrect manner, followed improper procedures in making its determination, or made findings of fact that are clearly erroneous. In re Horne, 876 F.3d 1076, 1083 (11th Cir. 2017); Alabama Dept. of Human Resources v. Lewis, 313-314 (Bkrtcy. S.D. Ala. 2002) (citing In re Club Assoc., 956 F.2d 1065, 1069 (11th Cir. 1992)). See also In re International Pharm. & Discount II, Inc., 443 F.3d 767, 770 (11th Cir. 2005) ("[t]he bankruptcy court's findings of fact are not clearly erroneous unless, in light of all the evidence, we are left with the definite and firm conviction that a mistake has been made[]"); In re Spiwak, 285 B.R. 744, 747 (Bkrtcy. S.D. Fla. 2002) (providing that "[a] district court reviewing a bankruptcy appeal is not authorized to make independent factual findings; that is the function of the bankruptcy court[]"); FED.R.BANKR.PROC. 8013 (on appeal, a bankruptcy court's findings of fact are reviewed for clear error).

A district court reviews a bankruptcy court's conclusions of law *de novo*. In re Simmons, 200 F.3d 738, 741 (11th Cir. 2000); In re Monetary Group, 2 F.3d 1098, 1103 (11th Cir. 1993) (providing that legal determinations are reviewed *de novo*). The reviewing court may affirm the Bankruptcy Court's decision on any basis supported by the record. Big Top Koolers, Inc. v Circus-Man Snacks, Inc., 528 F.3d 839, 844 (11th Cir. 2008).

### III. Discussion

The issue on appeal is whether the Bankruptcy Court erred when it denied Section 503(b) administrative expenses to Henry Marine. Specifically, the expenses at issue are those Henry Marine incurred for the mooring, preservation, and maintenance of the 1801 between March 13, 2017 (when the court found in favor of the Trustee's constructive fraud claim) and November 8, 2017 (when the settlement was approved and the order for Lanac to hold the 1801 in trust was withdrawn).

Henry Marine argues that the 1801 became property of the Estate via 11 U.S.C. §§ 541(a)(3),

5

550 and 548, based on the Bankruptcy Court's March 13, 2017 order finding in favor of the Trustee's fraudulent transfer avoidance claim. In short, Henry Marine argues that the Trustee held equitable title to the 1801 and that "Henry Marine's expenses were of actual benefit to the Estate because the Trustee attempted to recover the 1801 to benefit the Estate, did actually recover the 1801 for the benefit of the Estate, and Henry Marine's services in keeping the 1801 moored and maintained were essential to the vessel's safekeeping while it was property of the Estate." Moreover, Henry Marine contends that the Bankruptcy Court erred, as a matter of law, by conducting a *retrospective* versus *contemporaneous* analysis of the benefit to the Estate when the services were provided.

The Trustee responds that the 1801 was not an asset the Trustee was required to preserve, because there was no equity in the vessel to benefit the Estate. The Trustee notes that instead of having equitable title to the vessel, that the "Trustee's position was more akin to a fourth position judgment lien creditor…." (Doc. 5 at 11, note 4). The Trustee also contends that Henry Marine's claim was correctly denied because Henry Marine's expenses in docking and maintaining the 1801 did not arise from a transaction with the Estate, nor did the Estate derive an actual, concrete benefit from Henry Marine's services.

A. **Fraudulent Transfer Avoidance Claims & "Property of the Estate"**

Henry Marine's contentions are rooted in the argument that the 1801 was property of the Estate from March 13, 2017 to November 8, 2017 -- from which it argues that "legal authority mak[es] it clear that a post-petition creditor who stores property belonging to the bankruptcy estate is entitled to be fairly compensated for its services[.]" (Doc. 4 at 14).

On March 8, 2018, when assessing Henry Marine's administrative expenses claim, the Bankruptcy Court stated that: "the Trustee had only an inchoate equitable interest in the 1801[.]" In other words, the Trustee's property interest in the 1801 was contingent on the decision to sell it at

auction. Thus, although the Court found that there was constructive fraud and stated that an "order to return and sell the barge is necessary," the Court's actual order was for Lanac "to remove the barge from service and hold the barge in trust until the amount of the lien can be determined and the barge sold by the Trustee at public auction." (Doc. 3 at 107, 109). Thus, at that point in the litigation, the 1801 was not recovered by the Trustee. Therefore, the Court's finding that the Trustee's interest was inchoate has not been proven by Henry Marine to be incorrect as a matter of law or fact.[4] But regardless of the Trustee's property interest in the 1801, Henry Marine still shoulders the burden of proving it is entitled to an administrative expense.

B. **Two-Factored Test**

To determine whether a claim qualifies as an administrative expense under Section 503(b)(1)(A), courts apply a two-factor test: 1) the claim must arise from a transaction with the bankruptcy estate (i.e., post-petition transaction between creditor and debtor/trustee); and 2) the claim must have directly and substantially benefitted the estate. In re Gibson, 2014 WL 2624940, *3 (Bkrtcy. S.D. Ala. Jun. 12, 2014) (citing 4 COLLIER ON BANKRUPTCY ¶ 503.06 [3] (16th ed. 2015)). Moreover, "section 503 priorities should be narrowly construed in order to maximize the value of the estate preserved for the benefit of all creditors." In re Colortex Indus., Inc., 19 F.3d 1371, 1377 (11th Cir. 1994).

1. **Transaction with Bankruptcy Estate**

In the current case, the Trustee claims that there was no transaction between the estate and Henry Marine. The Trustee further states that she "had no ability to approve, disapprove or bargain for different terms for the 1801's docking and maintenance charges, because the agreement to dock and maintain it was made between Lanac, the owner of the 1801, and Henry Marine, the provider of the

---

[4] The court notes that 11 U.S.C. § 541(a)(4) provides that "[a]ny interest in property preserved for the benefit … of the estate" is property of the estate. No party argued the application of this section to the facts of this case.

marine services, before the Trustee acquired its inchoate equitable interest in the 1801." (Doc. 5 at 21). In response, Henry Marine contends that a formal transaction is not required and that the Trustee knew in March 2017 that the 1801 was at Henry Marine incurring daily charges yet "had the opportunity to take possession of the barge in March 2017 and manage it in the most cost-efficient way she could…." (Doc. 6 at 10).

There is no evidence that the Trustee in any way transacted business with Henry Marine. Nor is there evidence that she acquiesced in the services or induced Henry Marine to continue performing under its agreement with Lanac. Accordingly, Henry Marine failed to show that this claim arises from a transaction with the bankruptcy estate.

### 2. **Actual Concrete Benefit to Estate**

Henry Marine argues that the Bankruptcy Court erred in finding that there was no benefit to the estate. Specifically, Henry Marine points out that the Court conducted a retrospective analysis of whether the estate benefitted rather than conducting an analysis of the benefit to the estate when the services were rendered.

Section 503(b) reads in part:

After notice and a hearing, there shall be allowed, administrative expenses, ... including-

(1)(A) the actual, necessary costs and expenses of preserving the estate including --

 (i) wages, salaries, and commissions for services rendered after the commencement of the case....

11 U.S.C. § 503(b)(1)(A)(i). There must be an actual, concrete benefit to the estate before the expense is allowable. In re Subscription Television of Greater Atlanta, 789 F.2d 1530, 1532 (11th Cir. 1986). Considering that the 1801 remained with its owner Lanac, and that the Trustee put all interested parties on notice -- as early as March 27, 2017 -- that she did not believe that the 1801 held any value for the

estate, the Bankruptcy Court's determination that Henry Marine's services did not benefit the estate is not clearly erroneous.

IV. <u>**Conclusion**</u>

Based on the foregoing, it is **ORDERED** that the March 8, 2018 Order of the United States Bankruptcy Court for the Southern District of Alabama is **AFFIRMED.**

**DONE** and **ORDERED** this the 5th day of **November 2018.**

<u>/s/ Kristi K. DuBose</u>
**KRISTI K. DuBOSE**
**CHIEF UNITED STATES DISTRICT JUDGE**